*Court of Common Pleas, Dauphin County, December* 18*th,* 1854.

POFFENBERGER *v.* THE SUSQUEHANNA RAILROAD COMPANY.

Assessors, appointed under the act of February 19th, 1849, to assess damages to property caused by the building of a railroad, must find the value of the land taken. A report containing a lumping charge of all the injury done will be set aside. The court will not refer a report back to viewers for correction when their previous one seemed partial.

BY THE COURT.—The only point on which we consider it necessary to express an opinion in deciding the legal question in this case is presented in the fourth exception, and arises under the eleventh section of the act of February 19th, 1849, " Regulating railroad companies," which provides for the appointment of viewers to assess damages when the owner and the company cannot agree upon the amount thereof; and the viewers so appointed are required to view the premises and estimate and determine the quantity and *value* of the land so taken or occupied, or to be so taken or occupied, or the materials used or taken away ; and after making just allowance for the advantages which may have resulted, or which may seem likely to result to such owner, in consequence of the making or opening of said railroad, and also considering the disadvantages, estimate and determine, whether any damages, and if any, what amount shall be paid by said company. It is complained that the viewers, in assessing damages, have omitted to determine the value of the land as required by law, but have lumped it with many other alleged injuries, throwing all together

[Poffenberger *v.* The Susquehanna Railroad Company.]

into one general sum, and in this particular have violated the provisions of the act. The report shows very clearly the quantity and quality of the land taken, but nowhere states its *value;* but determines that the owner has or may sustain injury by reason of the construction of the railroad through his premises, for materials taken and used, for fencing, for damages done to the growing grass, crops, fences, gardens, fruit trees, and timber; and also the liability for future damages by fire to fences, crops, and buildings; and estimates his damages from all these causes at $1400. The report does not very clearly show that any amount whatever was allowed for the land, or that it was of any value; but we cannot help believing, from the whole tenor of the instrument, that it was esteemed valuable, and was thrown in with the many other articles to swell the damages to $1400. It is impossible to collect from the writing the value of the land; it is included in the damages, present and presumptive, done to the growing crops, likely to inure to the buildings from fire, and the fencing of the fields. Independent of the depositions, the question is fairly presented on the face of the report, that the value of the land and all the other damages were consolidated so as to render it impossible to ascertain the amount allowed for either. In Reitenburgh *v.* The Chester Valley Railroad Company (9 H. 100), it is declared to be essential for the viewers to state the *value* as well as the quantity and quality of the land taken. But we are told that this is a mere *dictum* of the judge who delivered the opinion, and is not the point of the cause. It is one of the errors assigned to the report, on which the Supreme Court is required by law to give an opinion, and in that sense is more than a mere *dictum.* It is also most emphatically a *dictum* of the act of Assembly. In the Ohio and Pennsylvania Railroad *v.* Wallace (2 H. 245), we find a similar opinion from the Supreme Court, expressed on an act of Assembly worded almost precisely like the one under consideration. Judge Rogers there declares that the act is not directory merely, but is as mandatory as the legislature can make it. That the object is to put an end to lumping estimates of compensation, by requiring the viewers to report to the court the means by which they arrived at their conclusions. This is both for the purpose of showing at an after time what was passed upon, and also the better to enable the court, having a supervisory power over their appraisement, to determine whether injustice has been done by their award. These two decisions we consider rule the present case. They determine this report to be invalid. It has been strongly urged that the form adopted here is that which has been pursued in all other cases under the various laws enacted from time to time; and that those laws are all worded in substance like the one under consideration. We have not examined the numerous reports for damages done by the Pennsylvania Canal, which are

said to be in the form now pursued; but when we turn to those laws we find the provisions essentially different. It is true that the act of February 25th, 1826, required the jury, selected by a justice of the peace, to be sworn to justly and impartially value the land and all damages the owner might have sustained, etc.; but it did not require that such value should be reported to the court, but the entire damages are to be returned, although they are directed to report the quantity of land and the duration of the estate therein. This act was soon superseded by that of April 9th, 1827, which neither directed the value or description of the premises to be inserted, but required the viewers to take into consideration the advantages and disadvantages of the canal to the petitioner, and report the damages, if any. This law continued in force until 1830, and under its provisions a large number of assessments were made throughout the State. From the time of its repeal the damages have been determined by the canal board, with an appeal to certain appraisers appointed by the governor. No argument can be fairly drawn from the practice under those laws. In Heister *v.* The Railroad Company, the land was valued in the report, and returned as a separate item; and such was the form generally pursued, so far as we have been able to ascertain, in the cases against the Pennsylvania Railroad Company. Therefore we consider that there is nothing in precedent or principle which will justify us in permitting viewers to depart from the plain mandate of the act of Assembly. We are also bound by the decisions of the Supreme Court already referred to; and think it highly important that viewers should, in every case, report the damages in detail, so as to show at all times to come what they had passed on, and also thus the better to enable the court to judge of the legality and correctness of their decisions. A question of great moment has been mooted in the argument of this cause. Does the act of 1849 authorize the viewers to assess consequential damages, or are they confined to the value of the land and materials? The point is not by any means clear of difficulty, and, as it has not been fully argued, we forbear to give an opinion upon it, as the point already referred to is decisive of the case. In coming to the conclusion to which we have been driven, the depositions have been left out of view, though we have no doubt that they are competent evidence. Since the argument of the cause the petitioner's counsel have requested us to refer the report back to the same viewers for amendment. This we have power to do in a suitable case; but we have great doubt as to the correctness of the jurors' conclusion in regard to the damages. Four hundred dollars appears to be a very high price for rather less than two acres of land, not taken out of the body of a farm, but alongside of a public road, especially as all the damages and inconvenience to which the owner is subject are otherwise compensated by

an allowance in the report.  One hundred and seventy-five dollars appears high for making or rather removing eighty-seven pieces of fence.  At present the owner of the land has to keep up his fence alongside the turnpike and railroad; the same fence will protect Mr. Poffenberger's land that did before, as there is no vacant ground between the turnpike and railroad.  No allowance appears to have been made for the benefits conferred by this road, the construction of which, we cannot help believing, will greatly enhance the value of the property.  For these reasons we decline referring the report to the viewers for amendment.  It is ordered by the court that the report of the viewers be set aside on the fourth exception filed.

*Fisher*, for plaintiff.

*Kunkel*, for defendant.